[No. D040457. Fourth Dist., Div. One. Oct. 16, 2002.]

LOUIS J., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Real Party in Interest.

## COUNSEL

Roberto Quinones, Jr., Alternate Public Defender, Erin Lehrter and Mary B. Livingstone, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Katherine R. Bird, Deputy County Counsel, for Real Party in Interest.

## OPINION

**BENKE, Acting P. J.**—Louis J. is the father of two dependent sons, C. (born in 1997) and T. (born in 1998), and is a petty officer in the United States Navy. At the 18-month review hearing the court denied Louis's motion for a stay of proceedings under the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C.[1] Appen. § 501 et seq., the Act). Louis contends the court abused its discretion because he made a clear showing that his ability to conduct his defense was materially affected by reason of his military service. He also claims his sons' best interests required a stay of the 18-month review hearing. We deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

C. and T. were taken from their mother Marlena W.'s custody in October 2000 after she engaged in a knife fight with her pregnant niece in the boys' presence. At that time Louis was stationed in Japan and living with his wife, LaTonya. Upon learning of the detention Louis traveled to San Diego. He told the social worker he was concerned about having enough money to support the boys and he needed to return to his ship. He was inconvenienced by the proceeding and thought that C. and T. should be returned to Marlena. The boys were released to Louis's care until he returned to Japan on November 13. C. and T. were then detained in foster care.

On November 14 Louis waived his appearance for the jurisdiction and disposition hearings, authorizing counsel to proceed on his behalf. The court declared the boys dependents on December 14 based on violent confrontations in Marlena's home and her excessive discipline of T. Louis did not

---

[1]All statutory references are to the United States Code unless otherwise specified.

[2]We limit the facts and procedures to those relevant to Louis's claims. Marlena did not reunify and does not petition.

request custody. He was ordered to complete a parenting course and show his ability and willingness to care for his sons. In June 2001 the social worker reported Louis did not respond to her letters regarding placing the boys with him.

For the 12-month review hearing social worker Sara Eaton reported Louis was now interested in gaining custody of his sons. C. was described as an angry and aggressive boy and was given psychotropic medication for hyperactivity. T. also had behavior problems. Eaton was investigating placing the boys with Louis in Japan. C.'s medical records were released to the Navy to determine if his special needs could be met at Louis's duty station in Japan. If not, C.'s needs could support Louis's reassignment by humanitarian transfer.

At the time of the review hearing on January 28, 2002, Louis had not commenced the transfer process. The court continued services to the 18-month date on the San Diego County Health and Human Services Agency's (HHSA) recommendation the boys would be placed with Louis upon his transfer.

In March Eaton reported that Louis did not undertake a humanitarian transfer because it would have required him to pay for his move to San Diego and he said he lacked funds. Louis stated he would apply for an early transfer. HHSA changed its recommendation to setting a permanency hearing. On April 16 the court ordered HHSA to contact Naval authorities to assist Louis with a transfer.

On June 18 HHSA "recommended an order" placing C. and T. with Louis. Eaton provided correspondence from a Naval legal officer stating Louis must have physical custody of his sons in order to move forward with a transfer. The officer wrote he fully briefed Louis on the procedure several months earlier.

Louis moved to stay the proceedings under the Act on July 2. He alleged he was assigned by the Navy to serve in Japan, his assignment did not allow for leave or transfer until November 2002 and but for the deployment, the HHSA would place C. and T. in his care. Louis provided a letter from his commanding officer in support of the motion. HHSA opposed a stay arguing Louis had not shown he attempted to be available for trial and that his rights would be adversely affected by his absence. After hearing argument on July 8, the court denied the request to stay the proceedings, terminated reunification services and set a permanency hearing.

Louis petitions for review of the orders denying the stay of proceedings and referring the matter to a permanency hearing. We issued an order to

show cause, HHSA responded and the parties waived oral argument. We review the petition on the merits and deny it.

## DISCUSSION

*Soldiers' and Sailors' Civil Relief Act of 1940.*

The purpose of the Act is to provide for "the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in [active military] service" while they are devoting their energies to the national defense. (50 U.S.C. Appen. § 510.) The Act provides an action shall be stayed upon motion of a serviceman or servicewoman during his or her period of military service "unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct [a] defense is not materially affected by reason of [said] military service." (50 U.S.C. Appen. § 521.) ▮ The Act " 'was intended to prevent any advantage to the civilian litigant and disadvantage to the soldier or sailor litigant growing out of the fact that one of the litigants was in the military service. [Citation.]' " (*Christine M. v. Superior Court* (1999) 69 Cal.App.4th 1233, 1243 [82 Cal.Rptr.2d 220].)

A determination on a stay request under the Act depends on the facts and circumstances of each case. (*Christine M. v. Superior Court, supra,* 69 Cal.App.4th at p. 1243.) The ruling is committed to the sound discretion of the trial court and its decision will not be disturbed unless it is arbitrary, capricious or patently absurd. *(In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

▮ Louis argues he exercised due diligence in attempting to make himself available for trial, his parental rights were materially affected and the stay would have lasted only five months. HHSA contends Louis did not show he requested leave to attend the hearing, he was not diligent in pursuing a permanent transfer and his position was made clear by his counsel. HHSA also points out Louis's parental rights were not in jeopardy at the 18-month review hearing and he is still in a position to obtain custody of his sons should he resolve his status with the Navy by the permanency hearing.

The record shows Louis was informed of the dependency proceeding at its inception and parented his sons in San Diego for several weeks in October

and November 2000. He then returned to his ship and indicated he did not want custody of the boys. They were placed in foster care. Approximately a year later Louis expressed interest in custody. The option of a humanitarian transfer was available to Louis, however, he rejected it because he would have been required to pay for his move from Japan to San Diego. Other transfer options were explained to Louis by the Naval legal officer. However, there is nothing in the record to show Louis took any definitive action during 20 months of the proceeding to put himself in a position to take physical custody of C. and T.

Louis does not explain how he was prevented from asserting a defense by being absent from the hearing. The aim of Louis's stay request was not to postpone the hearing until he could attend and participate, it was to give him time to be in a better position. ■ The Act "may not be used as a sword against persons with legitimate claims against servicemen. Some balancing between the rights of the respective parties must be arrived at." (*Slove v. Strohm* (1968) 94 Ill.App.2d 129, 133 [236 N.E.2d 326, 328].) ■ The boys have rights to a permanent home and an end to dependency. Louis's parental rights were not terminated at the review hearing and he has other remedies before the permanency hearing is held. On these facts the court did not abuse its discretion in denying the stay request.

*Best Interests*

Louis also argues a brief toll in the proceedings would have been in his sons' best interests. He claims he has done "all he can" to be a father to C. and T. while serving in the military and the boys "deserve to expand their relationship" with him.

C. and T. were three and two years old, respectively, when they were removed from their mother's care. They had been in foster care for 20 months at the time of the July 8 hearing, nearly one-half of their young lives. Both have serious behavior problems that are aggravated by their unstable upbringing and current situation. The record does not reflect what relationship, if any, Louis had with the boys before they became dependents. Although Louis verbally expressed his wish to have custody, his actions did not help the boys acquire a stable and permanent home. The statutory scheme requires deliberate resolution of dependency cases precisely because children need stability and prompt resolution of custody status in order to avoid the damage of prolonged temporary placement. (Welf. & Inst. Code, § 352.) The boys are entitled to have their matter proceed. Further delay was not in C.'s and T.'s best interests.

## DISPOSITION

The petition is denied.

Huffman, J., and O'Rourke, J., concurred.