[No. B179051. Second Dist., Div. Six. Feb. 28, 2005.]

GEORGE P., Petitioner, v.
THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY, Respondent;
SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Real Party in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

## COUNSEL

Theresa G. Klein for Petitioner.

No appearance for Respondent.

James B. Lindholm, Jr., County Counsel, and Leslie H. Kraut, Deputy County Counsel, for Real Party in Interest.

## OPINION

**PERREN, J.—** ◼ Petitioner George P. (petitioner), a member of the National Guard, was sent to Iraq during the pendency of a juvenile dependency case regarding custody of his son. The juvenile court granted a 90-day stay of the case under the Servicemembers Civil Relief Act (SCRA) (50 U.S.C. Appen. §§501–596), but denied petitioner's request for an additional stay. Here, we conclude that the granting of an *additional* stay under the SCRA is discretionary, and may be denied by the court if the servicemember's ability to appear and participate in a civil action is not adversely affected by his or her military duties.

Following denial of petitioner's request for an additional stay, the juvenile court terminated reunification services and set the case for a permanency plan hearing. (Cal. Rules of Court, formerly rule 39.1B, now rule 38; Welf. & Inst. Code, § 366.26.)[1] Petitioner seeks extraordinary writ review of that November 4, 2004, order. In this case, the juvenile court could reasonably deny the additional stay based on its finding that petitioner's military service did not adversely affect his participation in the case. [[/]]* We deny the petition.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.
*See footnote, *ante*, page 216.

220

## FACTS AND PROCEDURAL HISTORY

George P. was born in May 2003. Both the baby and his mother, Rebecca H., tested positive for methamphetamine. On May 16, 2003, real party in interest San Luis Obispo County Department of Social Services (DSS) filed a dependency petition alleging that petitioner, the presumed father, and mother Rebecca H. failed to care for the child and had placed him in substantial risk of physical harm. (§ 300, subds. (b) & (j).) George P. was placed in foster care because neither the mother nor petitioner could provide a stable or suitable residence for the infant.

The detention report states that the mother's history of substance abuse resulted in a dependency case concerning three other children, and that petitioner had failed to complete his drug and alcohol assessment or parenting classes in the case involving these other children. Petitioner is not the father of George P.'s half siblings but accepted a case plan as the mother's "significant other."

At the May 19, 2003, detention hearing, the court appointed an attorney for petitioner and ordered paternity testing to confirm that he was George P.'s father. Paternity was determined in July or August 2003.

The jurisdiction and disposition report states that a reunification case plan had been established for petitioner, but that George P.'s mother had declined services, did not want custody, and had moved out of the state. The report also states that a home study for petitioner would be conducted. Petitioner requested placement of the child with petitioner and petitioner's parents, but the report disclosed that such placement was unsuitable because petitioner's father had two convictions for child molestation and was required to register as a sex offender. (Pen. Code, § 290.)

An addendum to the report states that petitioner, other family members, and the foster parents had attended a "Team Decision Making" meeting with DSS staff to discuss placement. The team decided that George P. would continue living with his foster parents while petitioner worked on a case plan that emphasized parenting, including parenting drug-exposed infants. Petitioner represented that after two or three months of services, he would be able to safely parent his son. DSS discussed a transfer of the case to Tulare County where petitioner and his parents lived, but petitioner opposed the transfer.

Petitioner submitted to jurisdiction in August 2003, but the disposition hearing was continued until October 2003 to allow father to visit with his son and participate in other reunification services. DSS reports state that petitioner visited George P. infrequently, found excuses to cancel or cut visits

short, and refused to engage in routine parenting activities such as diaper changing during visits. Petitioner also failed to participate in parenting classes or take any initiative to improve his ability to parent the child.

The reports also revealed that George P.'s mother had reappeared, and that petitioner had resumed his relationship with her. DSS staff informed petitioner that, due to her drug problem and inability to care for any of her children, petitioner's resumed relationship with the mother jeopardized his ability to successfully reunify with his son.

The October 29, 2003, disposition order denied reunification services for the mother, and granted de facto parent status to the foster parents. A six-month review hearing was set for early 2004.

In late December 2003, petitioner was sent to Texas to prepare for his deployment to Iraq. His tour of duty was scheduled to extend into 2005.

In its January 2004 six-month status review report, DSS recommended termination of reunification services for petitioner. The report stated that petitioner's visits with George P. during November 2003 were unsatisfactory. Petitioner failed to show any improvement in his parenting skills, upset the baby, and was uncooperative and offensive with the foster parents. Some visits were cancelled and petitioner attempted to impose his own schedule on the foster parents and DSS staff. Petitioner was not complying with his reunification plan, and refused to maintain regular contact with his social worker.

In February 2004, petitioner filed a motion to stay the proceeding pursuant to the SCRA. Petitioner asserted that his military service prevented him from making further appearances in the case, including an appearance at the six-month review hearing. In April 2004, the juvenile court granted the motion, stayed the case for 90 days, and continued the 6-month review hearing until after expiration of the stay.

In May 2004, petitioner obtained an emergency leave and returned to San Luis Obispo County. A special hearing was set for May 27, 2004, for the purpose of taking petitioner's testimony for the six-month review hearing, his reunification efforts, and the DSS recommendation to terminate reunification services.

Petitioner testified that he had received the DSS six-month status review report, and that certain of the information in the report critical of his behavior and reunification efforts was inaccurate or incomplete. He testified that he had attended most of his parenting classes, and that his social workers did not

provide the assistance that he needed. He also testified that he was still unaware of his son's special needs, and that he had not contacted the baby's mother since December 2003. He acknowledged that he had married the mother, and that his relationship with her was "going to jeopardize me a little bit." He testified that his preference for placement was with the mother "in . . . rehab," but that he believed the mother no longer had a drug problem. Petitioner testified that he anticipated that his duty in Iraq would end in February 2005.

Petitioner filed a motion for an additional stay in August 2004 on the same ground as his first motion. The motion was set for September 2004 as part of the six-month review hearing. While the motion was pending, additional status review reports stated that petitioner had visited with George P. during his May 2004 leave, but continued to show a lack of parenting skills. The reports also stated that petitioner had not communicated with DSS staff by mail or telephone, and that numerous staff attempts to contact petitioner in Iraq had been unsuccessful.

On September 28, 2004, the juvenile court denied petitioner's motion for an additional stay. The court stated that petitioner "has been given more than a fair opportunity to participate in these proceedings."

The review hearing, now a six-month and twelve-month review hearing, proceeded and was completed in November 2004, after testimony from two DSS social workers outlining petitioner's unsatisfactory reunification efforts prior to his deployment to Iraq. In its November 4, 2004, order, the juvenile court found that "the evidence is not only clear and convincing but overwhelming that [petitioner] has not followed his case plan . . . ." The court terminated reunification services and set a permanent plan hearing.

## DISCUSSION

### No Error in Denial of Additional Stay

Petitioner contends that the juvenile court erred in denying his request for an additional stay. He argues that, unlike prior law, stays are mandatory under the SCRA.

■ We reject respondent's contention that petitioner waived his claim by failing to appeal the September 28, 2004, order denying his motion for the additional stay. Generally, the writ procedure for expeditious review of an order setting a section 366.26 hearing does not permit a party to challenge prior orders that were separately appealable. (*Steve J. v. Superior Court.*(1995) 35 Cal.App.4th 798, 811 [41 Cal.Rptr.2d 731].) In this case, however,

the motion for an additional stay was part of the review hearing, and was a material element of the court's findings in the November 4, 2004, order setting the section 366.26 hearing.

On the merits, we conclude that the granting of a motion for an *additional* stay under the SCRA is discretionary. (50 U.S.C. Appen. § 522(d); see also *id.*, § 502(2).) Further, the record supports the juvenile court's conclusion that petitioner's military obligations did not adversely affect his ability to participate in the dependency case both personally and through counsel.

■     Federal law has long provided that members of the military services may obtain a stay of civil litigation when military duties materially affect their ability to participate in the proceeding. Prior to 2003, the stay and other provisions protecting the rights of servicemembers were set forth in the Soldiers' and Sailors' Civil Relief Act of 1940. (Former 50 U.S.C. Appen. §§ 501–591.) In 2003, that act was amended and renamed as the SCRA. (Pub.L. No. 108-189, § 1 (Dec. 19, 2003) 117 Stat. 2835, codified as amended at 50 U.S.C. Appen. §§ 501–596.) The SCRA applies to all cases that were not final on December 19, 2003. (Pub.L. No. 108-189, § 1, 117 Stat. 2835.)

■     Under the SCRA, a party to a civil proceeding who has appeared but whose ability to participate is interrupted by military obligations is entitled to a 90-day stay and may obtain additional stays as circumstances require. (50 U.S.C. Appen. § 522.)[2] The court must stay the proceeding for not less than

---

[2] In relevant part, 50 United States Code Appendix section 522 provides: "(a) Applicability of section [¶] This section applies to any civil action or proceeding in which the defendant at the time of filing an application under this section—[¶] (1) is in military service or is within 90 days after termination of or release from military service; and [¶] (2) has received notice of the action or proceeding. [¶] (b) Stay of proceedings [¶] (1) Authority for stay [¶] At any stage before final judgment in a civil action or proceeding in which a servicemember described in subsection (a) is a party, the court may on its own motion and shall, upon application by the servicemember, stay the action for a period of not less than 90 days, if the conditions in paragraph (2) are met. [¶] (2) Conditions for stay [¶] An application for a stay under paragraph (1) shall include the following: [¶] (A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear. [¶] (B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter. [¶] (c) Application not a waiver of defenses [¶] An application for a stay under this section does not constitute an appearance for jurisdictional purposes and does not constitute a waiver of any substantive or procedural defense (including a defense relating to lack of personal jurisdiction). [¶] (d) Additional stay [¶] (1) Application [¶] A servicemember who is granted a stay of a civil action or proceeding under subsection (b) may apply for an additional stay based on continuing material affect of military duty on the servicemember's ability to appear. Such an application may be made by the servicemember at the time of the initial application under subsection (b) or when it appears that the servicemember is unavailable to prosecute or defend the action. The

90 days when requested in an application that sets forth the "manner in which current military duty requirements materially affect the servicemember's ability to appear," and includes a "letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized . . . at the time of the letter." (50 U.S.C. Appen. § 522(b)(2).)

■ In addition, a servicemember "may apply for an additional stay based on continuing material affect of military duty on the servicemember's ability to appear." (50 U.S.C. Appen. § 522(d)(1).) The servicemember must provide the same information as was required for the initial stay. And, "[i]f the court refuses to grant an additional stay of proceedings . . . , the court shall appoint counsel to represent the servicemember in the action or proceeding." (50 U.S.C. Appen. § 522(d)(1), (d)(2).)

Petitioner argues that the court had no discretion to deny a request for an additional stay. As he asserts, the prior Soldiers' and Sailors' Civil Relief Act provided for a stay during the period of military service "unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service." (Former 50 U.S.C. Appen. § 521; see *Louis J. v. Superior Court* (2002) 103 Cal.App.4th 711, 715 [127 Cal.Rptr.2d 26].) Petitioner argues that the omission of this clause from the SCRA establishes the intent of Congress to remove any judicial discretion in ruling on a request for a stay. We disagree.

■ The legislative history for the SCRA indicates that Congress recognized the shortcomings of the stay provision in the prior law. (H.R.Rep. No. 108-81 1st Sess., pp. 32–38 (2003); see also *In re Marriage of Grantham* (Iowa Ct.App., Nov. 15, 2004, No. 03-2100) 2004 WL 2579567.) Accordingly, section 522 of the SCRA sharply restricts the court's discretion with respect to granting or denying the initial 90-day stay. The stay is required whenever there is a showing of how military duty materially affects a servicemember's ability to appear in the action supported by a letter from the servicemember's commanding officer. (50 U.S.C. Appen. § 522(b)(2).)

■ The SCRA, however, distinguishes between the relatively automatic 90-day stay and "additional" stays. The SCRA expressly provides that the court may "refuse[] to grant an additional stay." (50 U.S.C. Appen. § 522(d).) Moreover, the SCRA provides protection in the event of denial by requiring the court to appoint counsel to represent the servicemember's interests. (*Ibid.*)

---

same information required under subsection (b)(2) shall be included in an application under this subsection. [¶] (2) Appointment of counsel when additional stay refused [¶] If the court refuses to grant an additional stay of proceedings under paragraph (1), the court shall appoint counsel to represent the servicemember in the action or proceeding."

■ The discretionary nature of additional stays is further revealed by the express purpose of the SCRA, which is unchanged from the purpose of prior law. The purpose of the SCRA to provide for "the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service" merely fine-tunes the purpose of the Soldiers' and Sailors' Civil Relief Act to provide for "the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in [active military] service." (Compare 50 U.S.C. Appen. § 502(2) with former § 510.) The word "prejudice" in the prior law has been replaced by the phrase "adversely affect" in the SCRA, but the SCRA continues to contemplate a stay only when it is necessary to avoid a material impact on the rights of the servicemember. (See *Lenser v. McGowan* (Ark., Sept. 16, 2004, No. 04-267) 2004 WL 2064892.)

■ Unquestionably, trial courts should be reluctant to hear a civil matter when one party is serving his country in an area of the world engulfed in conflict. As was the case with the prior law, the SCRA must be construed to prevent any disadvantage to a servicemember litigant resulting from his or her military service. The SCRA must be "liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." (*Boone v. Lightner* (1943) 319 U.S. 561, 575 [87 L.Ed. 1587, 63 S.Ct. 1223]; see also *Louis J. v. Superior Court, supra,* 103 Cal.App.4th at p. 715; *Christine M. v. Superior Court* (1999) 69 Cal.App.4th 1233, 1243 [82 Cal.Rptr.2d 220].)

Conversely, the SCRA is a shield, not a sword. The goal of preventing a servicemember from being disadvantaged by his or her service to the country is not furthered by giving servicemembers an unwarranted advantage over civilian litigants. (See *Louis J. v. Superior Court, supra,* 103 Cal.App.4th at p. 716.) A ruling on a request for an additional stay under the SCRA necessarily depends on the facts and circumstances of the particular case. In terms of the instant case, if petitioner's ability to defend his interests in the dependency case was adversely affected by his military service, an additional stay would have been warranted. But the goal of providing a stable and safe home for petitioner's young child should not be delayed unnecessarily if the record shows that his legitimate interests were fully protected by personal participation in the proceeding and representation of counsel. There is nothing in the SCRA that requires the juvenile court to disregard the purpose of the dependency law to expeditiously resolve the custody status of dependent children and place them in permanent homes. (See § 352; *Louis J.,* at p. 716.)

■ Here, we conclude that the trial court could reasonably find that petitioner's military service did not adversely affect his participation in the

dependency proceeding generally and did not adversely affect his ability to reunify with his child specifically. The record shows that, prior to his deployment to Iraq, petitioner appeared in the action and personally received reunification services for essentially the entire period required by law. When a child is under the age of three, reunification services are generally limited to six months from the date the child enters foster care. (§ 361.5, subd. (a)(2).) A child is deemed to have entered foster care either on the date of the jurisdictional hearing or 60 days after the child was initially removed from parental custody, whichever is earlier. (§ 361.5, subd. (a)(3).)

In addition, petitioner personally appeared in May 2004 during his leave to testify regarding his reunification services, the DSS reports critical of his efforts at reunification efforts, and the DSS recommendation that services be terminated. This testimony was deemed to be petitioner's testimony at the six-month review hearing so that, in essence, petitioner actually appeared during the critical hearing that precipitated his initial stay request and that later culminated in the November 4, 2004, order. In addition, petitioner was represented by counsel at all times and, based on the record, was not prevented from communicating with DSS staff and counsel while he was in Iraq. The termination of reunification services was based on events and conduct prior to petitioner's deployment, including failure to take advantage of reunification services or provide any indication that he could provide a safe and stable home for his child free of the damaging influence of a drug-dependent and uninterested mother and a grandfather required to register as a sex offender. It is reasonable to conclude that an additional stay would simply have delayed the inevitable November 4, 2004, order.

[[/]]\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## CONCLUSION

We recognize the tension that exists between the expeditious handling and placement of very young children who have been taken from their parents for their own safety, and the right of a parent serving his or her country to seek custody of that child. Our conclusion in this case is necessarily a narrow one. Because petitioner had his day in court and was given a full and fair opportunity to reunify with his child, the spirit and intent of the SCRA was

---

\*See footnote, *ante*, page 216.

satisfied. Petitioner has no further legitimate interest in placing the life of his child on hold. The trial court was fully apprised of the facts and had the benefit of petitioner's full participation in the case before the court made its order terminating reunification services.

The writ is denied.

Gilbert, P. J., and Coffee, J., concurred.