[No. D055539. Fourth Dist., Div. One. Apr. 27, 2010.]

In re AMBER M. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
IAN M., Defendant and Appellant.

‎ 

‎ **COUNSEL**

Suzanne M. Davidson, under appointment by the Court of Appeal, for Defendant and Appellant

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Katharine R. Bird, Deputy County Counsel, for Plaintiff and Respondent.

Robert W. Gehring, under appointment by the Court of Appeal, for Minors.

**OPINION**

**NARES, J.**—Ian M. (father) appeals the denial of his request for a stay of dependency proceedings involving his two children, Amber and Ian, under the Servicemembers Civil Relief Act (SCRA), title 50 United States Code Appendix sections 501 to 596.[1] The court denied the request for a stay, finding it did not comply with the requirements of section 522(b). Specifically, the court found the letter father submitted from his commanding officer did not demonstrate that his active military duty prevented his appearance at the proceedings. The court thereafter entered a voluntary plan and terminated jurisdiction.

Father appeals, asserting (1) the stay request met the SCRA's conditions; (2) his request substantially complied with the SCRA's conditions; and (3) the court erred in ordering a voluntary plan without notifying him and obtaining his consent, in violation of his due process rights and Welfare and Institutions Code section 301.

We conclude that (1) liberally construing father's application for a stay, it met the requirements of section 522(b) or at minimum substantially complied

---

[1] All further statutory references are to title 50 United States Code Appendix unless otherwise specified.

with the requirements of section 522(b); and (2) assuming it did not meet the requirements of section 522(b), the court abused its discretion in denying a stay. Accordingly, we reverse the court's order terminating jurisdiction and remand this matter to the trial court for further proceedings consistent with this opinion. We therefore need not address father's contention he did not receive adequate notice of the voluntary plan ordered by the court.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Background*

Lousha (mother) and father were in a relationship for almost six years. Although they never married, they had two children, two-year-old Amber and one-year-old Ian. Both children and mother are members of the Navajo Nation, while father is a member of the Hopi Tribe.

Father has been in the Navy for 13 years as an avionics technician. He was deployed to Iraq on February 19, 2009, with an expected return date of February 10, 2010.

Father's relationship with mother involved domestic violence, with father the victim in the relationship. The children came to the attention of the San Diego County Health and Human Services Agency (the Agency) after it received a referral stating that mother had assaulted father in front of the children. The incident occurred after father informed mother that he wanted to end their relationship. About a month later, an argument occurred over moving expenses, and mother poured coffee over father's head and hit him with a bowl, causing lacerations and contusions. Amber cried during and after the incident. Mother was arrested for spousal abuse. Father obtained a restraining order against mother.

### B. *Dependency Proceedings*

Based upon mother's domestic violence, in February 2009[2] the Agency filed a dependency petition on behalf of both children under Welfare and Institutions Code section 300, subdivision (b). The petition alleged father and mother exposed the children to domestic violence and failed to adequately protect them from the risk of physical harm.

Mother attended the detention hearing held the next day. Father was not present as he was sequestered pending his deployment. Counsel for father gave father's address as father's parents' address in Arizona. Father would

---

[2] All further date references are to the calendar year 2009 unless otherwise specified.

not have a personal address until he reached Iraq. Father's counsel requested that the children be detained with father's parents in Arizona. Counsel for mother requested that they be detained with her, given there was little risk of continued domestic violence while father was deployed in Iraq, and given her agreement to participate in voluntary services.

The court found there was a prima facie showing the children were persons described in Welfare and Institutions Code section 300, subdivision (b). Because there was no allegation the children were neglected, the court ordered the children temporarily detained with mother. The court conditioned that detention on mother immediately participating in voluntary services.

In April a jurisdiction and disposition hearing was held. Representatives of both the Navajo Nation and Hopi Tribe were present. Both the Navajo Nation and Hopi Tribe requested leave to intervene. Father and mother each requested that the children be detained with them and that the case be transferred to their respective tribes. Both parents objected to the other's request that the case be transferred to his or her respective tribe.

Counsel for father informed the court father's only current address was in care of his parents. Counsel had been in contact with father by e-mail.

The court ordered the children remain detained with mother. A contested jurisdiction/disposition hearing was set for June 9.

### C. *Father's Request to Stay Proceedings*

Father filed a request to stay the proceedings under the SCRA. The request for stay indicated that his deployment rendered him unable to appear at any court dates. He further argued that his year-long deployment would make it impossible for him to reunify during the statutory time and to participate in court-ordered services. Father argued that a denial of his request would prejudice him as a case closure before he returned from Iraq would cause him not to be able to request placement of the children with his parents or visitation consistent with his participation in his case plan.

In support of his request for a stay, father submitted a letter from his commanding officer. That letter confirmed that he was currently under orders to deploy to Iraq, with an estimated return date of February 2010. The letter also stated that father "will be unable to attend the current scheduled court date of 9 Jun[e] 2009" because of his deployment.

The Agency opposed the stay request, arguing that the request for a stay did not meet the requirements of section 522(b) because (1) it did not show

how father's deployment would materially affect his ability to appear at the June 9 hearing; (2) it did not indicate when father would be able to appear; (3) it did not specify how his military service prevented him from appearing on June 9; and (4) it did not show that father would not be entitled to military leave after his training and before his deployment to Iraq.

Prior to the June 9 hearing date, the court received the Agency's jurisdiction and disposition addendum report. The report indicated father was in town for one day on May 5. It also indicated he planned to be in town over the weekend on April 25 through 26 and had requested that mother allow him to visit.

The Navajo Nation opposed the request for stay, arguing father had not met the requirements of the SCRA because the letter from his commanding officer did not state whether he had requested leave or that leave was unauthorized.

On May 22 a hearing was held on father's request for stay. The court denied the request for stay, indicating the letter from father's commanding officer was insufficient to support the request under the SCRA. The court noted that while the letter stated that father could not attend the hearing on June 9, "[i]t does not tell us he could not appear at any time prior to that or after that, nor, most importantly, does it tell us that he cannot appear telephonically." The court also noted that father was in town on May 5 and wanted to visit the children April 26 and 27. The court was troubled by the fact that no request was made to schedule a hearing around a time he was in San Diego, and there was no information provided indicating his duty prevented his appearance and that he could not obtain leave.

Counsel for father indicated that father was considered deployed as of February 2009 and that he then attended training at various bases. Deployed soldiers such as father were not authorized to tell when they would be at various locations or for how long.

The court indicated that it would continue the matter to give father the opportunity to supplement the letter from his commanding officer to provide more information on his inability to participate in the proceedings and whether he could appear telephonically. Counsel for father indicated she would contact father's commanding officer to obtain that information.

### D. *Jurisdiction and Disposition Hearing*

The contested jurisdiction and disposition hearing went forward on June 9. With regard to the request for stay, the court indicated that it had received no further information in support of that request. Counsel for father indicated

that after the last hearing she had attempted to contact father's commanding officer to obtain a letter with the specific language needed under the SCRA. Counsel had received no response to her request. Counsel for father argued father was unavailable for this hearing as he was deployed to Iraq two to three weeks prior to the hearing, and she renewed the request for a stay. Counsel requested in the alternative a continuance to allow time to get more information from the Navy.

The social worker on the case testified that she had spoken with father on the phone two or three days prior to the last hearing, held on May 22, and he indicated he was on a ship either on his way to Iraq or that he was in Iraq. Mother testified that father left San Diego for New Jersey May 6, flew to Amsterdam on May 8, and arrived in Baghdad on May 29. She indicated that he had turned his cell phone off in May because of the cost, and she had been in touch with him by e-mail.

The court denied both the request for the stay and for a continuance.

The Agency requested that the court assume jurisdiction over Ian and Amber and minor's counsel joined. The court found by a preponderance of the evidence the children were persons described in Welfare and Institutions Code section 300, subdivision (b), but the court did not declare them dependents of the court. The children were to remain with mother. The court ordered a voluntary service plan under Welfare and Institutions Code section 360, subdivision (b). Mother's services were to be coordinated between the Agency and the Navajo Nation social services agency. The court retained father's right to unsupervised visitation.

The court terminated jurisdiction, with no further hearings scheduled. This timely appeal followed.

## DISCUSSION

### I. *STATUTORY SCHEME*

■ The SCRA applies to any judicial proceeding in state court, except criminal proceedings. (§ 512(a) & (b).) The purposes of the SCRA are "(1) to provide for, strengthen, and expedite the national defense through protection extended . . . to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and [¶] (2) to provide for the temporary suspension of judicial . . . proceedings . . . that may adversely affect the civil rights of servicemembers during their military service." (§ 502.) "[T]he SCRA must be construed to prevent any disadvantage to a servicemember litigant resulting from his or her military service"

and "must be 'liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation.' " (*George P. v. Superior Court* (2005) 127 Cal.App.4th 216, 225 [24 Cal.Rptr.3d 919] (*George P.*).)

 Upon application, a military servicemember who is a party to a civil action is entitled to a mandatory stay of the proceedings for 90 days. (§ 522(b)(1).) The application must set forth facts that show how "current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear" and "[a] letter . . . from the . . . commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized . . . at the time of the letter." (§ 522(b)(2)(A) & (B).) "The court *must* stay the proceeding for not less than 90 days" upon such an application. (*George P., supra*, 127 Cal.App.4th at pp. 223–224, italics added.) Additionally, a servicemember "may apply for an additional stay based on continuing material affect of military duty on the servicemember's ability to appear." (§ 522(d)(1).)

 The SCRA applies to juvenile dependency proceedings. (*In re A.R.* (2009) 170 Cal.App.4th 733, 742 [88 Cal.Rptr.3d 448].)

## II. *ANALYSIS*

Liberally construing father's application for a stay, as we must, we conclude it met the requirements of the SCRA. The letter from his commanding officer indicated that he was currently under orders to deploy to Iraq, and was not expected to return until February 2010. The letter stated that he was unable to attend the June 9 contested disposition and jurisdiction hearing. From these facts, we can infer that he was not authorized to take leave. Further, the evidence presented by the social worker and mother at the disposition and jurisdiction hearing confirmed the fact he had deployed to Iraq and arrived there on May 29, and thus was unable to attend the June 9 hearing.

Moreover, the application for a stay itself confirmed father's unavailability to participate in the proceedings. The request for a stay stated that his deployment rendered him unable to appear at any court dates. He further argued that his year-long deployment would make it impossible for him to reunify during the statutory time and to participate in court-ordered services. Counsel for father informed the court father had minimal phone access and could only be reached by e-mail. The fact he could only be reached by e-mail was confirmed by mother at the disposition and jurisdiction hearing.

The court's belief that it was possible for father to appear telephonically is of no moment. There is nothing in the SCRA that indicates that a telephonic appearance is sufficient to protect a servicemember's rights. Rather, the SCRA's requirement that a servicemember demonstrate he or she cannot appear in the proceeding and cannot obtain leave to do so contemplates a physical appearance at the proceedings.

■ Further, even if the letter from father's commanding officer did not technically meet all requirements of the SCRA, we conclude that it substantially complied with the act. As stated above, "the SCRA must be construed to prevent any disadvantage to a servicemember litigant resulting from his or her military service" and "must be 'liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation.' " (*George P., supra,* 127 Cal.App.4th at p. 225.) The purposes of the SCRA are "(1) to provide for, strengthen, and expedite the national defense through protection extended by this Act [said sections] to servicemembers of the United States *to enable such persons to devote their entire energy to the defense needs of the Nation*; and [¶] (2) *to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service.*" (§ 502, italics added.) As the United States Supreme Court has noted, "the Act must be read with an eye friendly to those who dropped their affairs to answer their country's call." (*Le Maistre v. Leffers* (1948) 333 U.S. 1, 6 [92 L.Ed. 429, 68 S.Ct. 371] [interpreting the SCRA's predecessor].) An overly technical reading of the SCRA, in a manner that would disadvantage a servicemember on deployment overseas in defending his or her interests in pending litigation, would be contrary to its purpose. ■ Where, as here, a servicemember provides evidence sufficient to show that he or she is actually unavailable to appear in the proceedings, and the continuance of the proceedings would adversely affect his or her rights, a stay application should be granted.

Further, as the Agency acknowledges, there is out-of-state authority construing the SCRA that holds that if a servicemember's application under section 522(b) does not meet the statutory requirements, courts still have discretion to stay the proceedings. (See *In re Marriage of Bradley* (2006) 282 Kan. 1 [137 P.3d 1030, 1034].) We conclude that even if father's application was insufficient, the court abused its discretion in failing to grant a stay. It is undisputed that father was unavailable to appear at the June 9 jurisdiction/disposition hearing. The evidence showed that at that time he was in Iraq. There was no detriment to mother or the children as they remained detained with her. The court should have granted a stay at least until information could be received from father's commanding officer as to whether he would be available to appear prior to the end of his deployment.

## DISPOSITION

The June 9, 2009 jurisdiction and disposition order is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Huffman, Acting P. J., and O'Rourke, J., concurred.