Filed 5/9/14  Marriage of Brown CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of LUCINA and JERRY BROWN. | D063584 |
| LUCINA BROWN, | |
| Respondent, | (Super. Ct. No. EFL08772) |
| v. | |
| JERRY BROWN, | |
| Appellant. | |

APPEAL from an order of the Superior Court of Imperial County, Diane B. Altamirano, Judge.  Affirmed.

Law Office of John F. Lenderman and John F. Lenderman for Appellant.

Marcus Family Law Center, Ethan Marcus, Erin K. Tomlinson and Case Kamshad for Respondent.

I.

INTRODUCTION

Appellant Jerry Brown (Jerry)[1] appeals from a postjudgment order of the trial court pertaining to the distribution of his military pension between him and his ex-wife, Lucina Brown (Lucina), an award of attorney fees and spousal support. According to Jerry, the trial court violated his right to due process of law, and also violated the Servicemembers Civil Relief Act (50 U.S.C., § 850 et seq.) (SCRA), by failing to grant him an additional request for a stay after having granted multiple previous requests for continuances, on the ground that Jerry was on military deployment on the date of the hearing. Specifically, Jerry contends that the trial court should have stayed the matter in order to allow him the opportunity to provide oral testimony regarding the distribution of a $30,000 lump sum payment provided under the military retirement system that Jerry had elected, prior to deciding that Lucina was owed half of that payment as her share of the community property. Jerry also argues that the trial court erred by failing to "balance the hardships to both parties" when it ordered that the pension division and the attorney fees award be collectible as spousal support.

We conclude that Jerry's contentions are without merit. Jerry was provided ample opportunity to present evidence regarding his military pension, including the distribution of the lump sum payment, in the one and one-half year period between when Lucina moved for a division of the military pension and the date of the hearing at issue. Because

---

[1] We use the parties' first names for clarity.

Jerry had already sought and received one stay of the proceedings due to his military service, it was within the court's discretion whether to grant Jerry's second request. We conclude that the trial court did not err in denying the second request for a stay. Finally, there is nothing in the record that demonstrates that the trial court failed to balance the hardships to the parties in deciding to order that the pension and the attorney fee award be collectible as spousal support. We therefore affirm the trial court's postjudgment order.

II.

FACTUAL AND PROCEDURAL HISTORY

On March 23, 2011, the trial court entered a judgment of dissolution, dissolving the marriage between Lucina and Jerry. In that judgment, the court awarded Lucina a percentage of the community interest in Jerry's military retirement, pursuant to the formula provided in *In re Marriage of Brown* (1976) 15 Cal.3d 838. However, the court reserved jurisdiction to consider a motion filed by Lucina if she wished to receive her portion of the military retirement immediately, pursuant to the authority of *In re Marriage of Gillmore* (1981) 29 Cal.3d 418.

On May 11, 2011, Lucina filed a motion for immediate receipt of her portion of Jerry's military retirement. In the motion, Lucina requested that Jerry's military pension be divided between the parties according to the "time rule"[2]; that Jerry be ordered to pay

_____

[2] Pursuant to the "time rule," "the community property interest in retirement benefits is the percentage representing the fraction whose numerator is the employee spouse's length of service during marriage before separation . . . and whose denominator is the employee spouse's length of service in total . . . ; the separate property interest is the

3

Lucina her portion (with an offset) immediately; and that Jerry be required to pay Lucina's attorney fees for having to bring the motion, as well as fees that Lucina incurred in an Arizona action that Jerry had initiated. Lucina submitted a valuation for Jerry's pension in support of her motion.

The trial court originally set the hearing date for Lucina's motion for June 13, 2011. Prior to that hearing, on June 7, Jerry filed a responsive declaration to Lucina's motion, including objections to her requests, and facts in support of his objections. Jerry did not raise the issue regarding the use of a "REDUX" formulation for calculating his military pension despite the fact that he had earlier in his military career elected to be part of the REDUX retirement system, which meant that he might receive a smaller retirement benefit than if he did not elect to be part of that system, but would provide him with a $30,000 lump sum payment upon his 15th year of service.[3]

---

percentage representing the remainder of 100 percent *minus* the community property interest percentage." (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 176.)

[3] According to the Office of the Secretary of Defense, the REDUX retirement system is one of three possible retirement systems that might apply to a particular service member. (<http://www.militarypay.defense.gov/retirement/ad/01_whichsystem.html>.) A service member may elect to be part of the REDUX retirement system by choosing to receive a lump sum payment of $30,000 upon his or her 15th year of service:

> "The Military Reform Act of 1986 created the REDUX retirement system and it applied to all members who joined on or after August 1, 1986. The National Defense Authorization Act (NDAA) for FY2000 amended this system. The NDAA made two major changes: 1) it allows those in this group to choose between the High-3 retirement system and the REDUX retirement system and 2) it added a $30,000 Career Status Bonus [CSB] as part of the REDUX retirement system.

At the hearing on June 13, 2011, the court indicated that an evidentiary hearing would be required with respect to the issue of the division of Jerry's retirement benefits. The court set that hearing for March 1, 2012. The court's order also continued a hearing that had apparently been set for June 20, 2011, to the March 1, 2012 hearing date. The following day, June 14, Jerry's attorney filed a declaration that included correspondence from Jerry and his commanding officer, dated June 3 (i.e., prior to the execution of Jerry's responsive declaration submitted in response to Lucina's motion). In that correspondence, Jerry stated that he would be unavailable to attend proceedings related to this civil court matter until February 2012, due to his military duties.

---

"[¶] . . . [¶]

"Those members who elect the CSB/REDUX retirement system at their 15th year of service receive a $30,000 Career Status Bonus. To receive this bonus, the member must agree to complete a twenty-year active duty career with length-of-service retired pay under the 1986 Military Retirement Reform Act—1986 MRRA or REDUX. Contin[u]ation beyond twenty years is possible, subject to Service personnel management actions. However, the member's commitment with the CSB is only to the 20-year point. The entire $30,000 bonus, or first installment payment for those electing a multi-year payment option, is paid shortly after the member makes the CSB/REDUX election and commits to the 20-years-of-service obligation."
(<http://militarypay.defense.gov/retirement/ad/04_redux.html>.)

Although Jerry did not raise the issue of using the REDUX system methodology in calculating his military pension benefit at this point in the proceedings, he did raise the issue at a later point, contending that he had elected to be in the REDUX retirement system, as we explain later in this section.

5

A minute order entered on February 15, 2012, indicates that the trial court, on its own motion, took off calendar a "settlement conference" set for that date. However, the court confirmed the hearing scheduled for March 1, 2012.

On March 1, 2012, the trial court continued the scheduled hearing to March 21, pursuant to a stipulation of the parties. On March 21, the court granted another continuance after both attorneys agreed to continue the hearing to May 23, 2012.

On May 23, Jerry's attorney requested another continuance, to August 29, "due to a complicated pension issue." On August 29, 2012, the court intended to proceed with the hearing. However, Lucina's attorney informed the court that Jerry's attorney had called him and told him that he would be unable to attend.[4] Lucina's attorney agreed to yet another continuance of the hearing regarding the retirement and related matters, to October 9, 2012.

Five days before the October 9, 2012 hearing, Jerry's attorney filed a document entitled "Respondent's Notice of Unavailability for Court Hearing." Attached to the document was a memorandum from Lieutenant Colonel James Anderson, dated October 2, 2012, indicating that Jerry's original orders, which had called for him to deploy on or before November 5, 2012, had been changed and that he was now required to report for deployment on October 5, 2012.

On October 9, 2012, approximately a year and a half after Lucina filed her motion, Lucina and her attorney appeared in court, as did Jerry's attorney. Jerry's attorney

---

[4] The record provides no further information as to why Jerry's attorney failed to appear on August 29, 2012.

requested that the matter be continued yet again so that he could call Jerry as a witness. Lucina objected to an additional continuance, and the court allowed the attorneys to argue with respect to whether the court should grant another continuance. The trial court indicated that it was inclined to allow the hearing to proceed as scheduled, but "due to time constraint[s]" the court would have to continue the matter to October 12. At this point, Jerry had still not yet raised the issue of the REDUX retirement system calculation.

On October 11, 2012, Jerry filed an "Amended Trial Brief." In this filing, Jerry asserted for the first time that he had "chose[n]" the REDUX retirement system, and provided an equation for calculating his retirement benefit. Jerry's attorney also asked for a continuance to allow Jerry to testify and to "lay a foundation for testimony."

The following day, Jerry's attorney appeared at the hearing and informed the court that Jerry was unavailable due to his early deployment. Jerry's attorney sought another continuance, arguing that Jerry's testimony was necessary to resolve the dispute over the $30,000 lump sum REDUX payment. Lucina's attorney responded by noting that Jerry had failed to even disclose the $30,000 payment throughout the discovery process or at any time during the year and a half that Lucina's motion had been pending, and that Jerry's presence was unnecessary for the court to adjudicate the division of Jerry's retirement benefit. Lucina had no objection to the court considering any pleadings filed by Jerry.

Jerry's attorney then indicated to the court that he had been unaware of the $30,000 lump sum REDUX payment until two months prior to the October 12, 2012 hearing. He argued that although he had *no personal knowledge* of what the $30,000 had

7

been used for, his understanding was that it had been used by the parties to purchase a home in Arizona. Lucina addressed the court and indicated that she had been unaware of the $30,000 REDUX payment, and stated that the funds had not been used to purchase a home in Arizona. In response, Jerry's attorney stated that Jerry would have been present to testify as to the disposition of the $30,000 payment, if not for his early deployment. The trial court noted that Jerry's deployment orders had been issued on September 24, 2012, and questioned why Jerry's attorney "could not have submitted a declaration by his client relevant to this issue." Jerry's attorney apparently had no response to this inquiry.[5] The attorneys then changed the subject and began to argue regarding whether the distribution of Lucina's portion of Jerry's pension, as well as attorney fees that had been awarded to her, could be ordered collectible as spousal support, so that Lucina "could collect from Defense Finance and Accounting Service, the U.S. military's finance and accounting service."

At the end of this hearing, the trial court ordered Jerry "to pay [Lucina's] attorney's fees in the amount of $5,500, plus her share of the retirement plan minus her equalizing payment," and "[c]ommencing 07/01/2011, [Jerry] was to pay $229.00 per month to [Lucina] in satisfaction of her *Gillmore* rights with regard to the community interest in

---

5      The parties have not provided a full reporter's transcript of everything that was said at the hearing. Instead, the parties have submitted a "settled statement" with respect to the hearing, and it is from this settled statement that we take the facts regarding what occurred at the hearing. The settled statement indicates that immediately after the trial court questioned why Jerry's attorney had not submitted a declaration by his client prior to the hearing concerning the $30,000 REDUX payment, the attorneys began to argue about a different topic.

8

[Jerry's] pension previously awarded to L[ucina] at trial."  The court made the monthly payment collectible as spousal support, indicating that the payments would terminate upon Lucina's demise.  The trial court gave Jerry's attorney two weeks to review the "Findings & Order After Hearing" with his client and approve it for the court's signature.

Five days later, on October 17, Lucina filed a motion for reconsideration of the court's order.  Lucina requested that the court enter an order in line with the court's stated orders as set forth on October 12, but with a spousal support award of $264.83 per month rather than $229 per month, effective as of September 1, 2011 instead of July 1, 2011, with a two percent cost of living adjustment each year, commencing January 2012.  On October 26, Jerry filed a responsive declaration to Lucina's motion for reconsideration, registering his opposition to Lucina's requests.

The court held a hearing on Lucina's motion on November 8, 2012.  The parties' attorneys were present, but neither party was present.  At the conclusion of the hearing, the court ordered as follows:

> "1) Respondent's income was confirmed at $7,049.00 per month, 2) the REDUX was included in the calculation of Petitioner's portion of Respondent's pension, 3) Respondent's payment to Petitioner for her *Gillmore* election with regard to Respondent's pension was confirmed as $229.00 per month and collectible as and for spousal support, 4) $5,500 in attorney's fees previously awarded to Petitioner was ordered payable at $250.00 per month with the award being payable as spousal support arrears should two payments be missed by Respondent, and 4) the COLA issue was continued to a hearing set for 12/04/2012."[6]

---

6    This version of the court's oral order on that day comes directly from the settled statement of facts filed by the parties.

9

Prior to the December 4, 2012 hearing, Jerry's attorney filed a copy of an e-mail that he asserted was from Jerry, in which Jerry claimed that the $30,000 REDUX funds had been received in 2005 and had been used to purchase the parties' home and all the furnishings. Jerry also stated that in 2011, a military audit determined that there had been an error in the calculation of his retirement, in that his REDUX election had not been documented. At that point in time, a correction was made and Jerry's pay record was amended to reflect the correction.

On December 4, the trial court heard further argument regarding whether the REDUX election affected the pension division calculation, the attorney fees matter, the cost of living adjustment requested by Lucina, and the appropriate division of the $30,000 lump sum payment. At the conclusion of this hearing, the court ordered the following:

> "1) REDUX does apply to the pension division calculation, 2) half of the $30,000 REDUX payment was due to Petitioner because there was no competent evidence to the contrary, 3) COLA was set at 2%, 4) Petitioner's portion of Respondent's retirement was confirmed as collectible as spousal support along with the previous attorney's fees award of $5,5000.00, 5) the $15,000.00 due to Petitioner was awarded as a community property division, 6) an additional $2,500 in attorney's fees were awarded to Petitioner and the Respondent's request for attorney fees was denied."

On January 15, 2013, the trial court entered a document entitled "Findings and Order after Hearing," arising from the October 12, November 8, and December 4 hearings. Jerry filed a timely appeal from this as an order after judgment.

10

DISCUSSION

A. *The trial court did not violate Jerry's procedural due process rights, and did not abuse its discretion, in going forward with the continued hearing despite Jerry's absence.*

Jerry argues that he was denied his right to procedural due process when the trial court proceeded to determine how his military pension, including the REDUX payment, was to be divided between the parties in his absence. Jerry contends that he has a protectable property interest in his pension, and that he was therefore entitled to notice and an opportunity to be heard prior to the trial court determining what portion of the $30,000 payment, if any, was due to Lucina. According to Jerry, the trial court violated his procedural due process rights by not allowing him to "give testimony because his additional SCRA request was denied."

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation.]" (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333 (*Mathews*).) Due process is a flexible concept (*People v. Hansel* (1992) 1 Cal.4th 1211, 1219), and flexibility is needed in order to gear the process to the particular need. (*Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 728.) Thus, it is clear that not every situation to which the right to procedural due process applies calls for the same procedure to ensure that right is protected. (*People v. Hansel*, *supra*, at p. 1219; see *Morrissey v. Brewer* (1972) 408 U.S. 471, 481.) For example, not every situation requires a formal hearing with full rights of confrontation and cross-examination. (*Saleeby v. State Bar* (1985) 39 Cal.3d 547, 565; *Conservatorship of Moore*, *supra*, at p.

11

728.)  "What must be afforded is a ' "reasonable" opportunity to be heard.  [Citations.]" (*Saleeby v. State Bar*, *supra,* at pp. 565-566.)

Jerry was on notice of Lucina's request for more than a year and half before the trial court ruled on that request.  He was represented by counsel throughout the proceedings.  From the record, it appears that the final two continuances were granted at the request of Jerry and his attorney.  At any point during these proceedings, Jerry could have presented *some* kind of evidence regarding the distribution of the $30,000 lump sum REDUX payment.  The evidence that Jerry presented with respect to his election of the REDUX retirement system was a document from the Department of the Navy dated July 5, 2011, showing Jerry's naval record and stating that his record would be corrected to show his REDUX plan election.  This document demonstrates that Jerry had this evidence available for more than a year prior to any mention of the REDUX election and the lump sum payment in these proceedings.[7]  However, rather than provide Lucina with this information at an earlier point in time, Jerry waited until just a few days prior to the October 9, 2011 hearing date to raise the issue of the REDUX retirement system calculation.

Although we can imagine a scenario in which the credibility of the parties might have been an issue, and in such a circumstance the court's ability to make a credibility determination may have required live testimony from both Jerry and Lucina, in this instance, no such credibility determination was necessary.  More than a year and a half

---

[7]    Further, Jerry was obviously aware of the $30,000 REDUX lump sum payment when it was distributed in 2005, upon his REDUX retirement system election.

after Lucina filed her request to divide the pension, Jerry finally acknowledged receipt of the $30,000 lump sum payment, and offered *no evidentiary support* for his attorney's claim that these funds had been used by the community to purchase a home. By offering no evidence of any sort, Jerry failed to raise an issue of credibility, and the trial court was free to conclude that Lucina's evidence provided a sufficient basis for its determination. Prior to entering its order, the trial court had suggested to Jerry's attorney that Jerry could file a declaration in support of his argument that there should be no division of the $30,000, in response to Lucina's motion. Despite this suggestion, which might have created a factual dispute, thereby placing the parties' credibility at issue and giving the trial court a reason to delay the proceedings until both parties could be present and the court could assess their respective credibility regarding this payment, Jerry *did not file any competent evidence*, nor did he indicate in any way that he planned to do so or was willing to do so. In fact, over a period of more than two months, during which the court held at least two additional hearings on these matters in response to Lucina's motion for reconsideration, Jerry still did not file a declaration nor make any attempt to demonstrate with competent evidence that the $30,000 lump sum payment had been used for purposes that benefited the community.

Futher, the trial court's order was not filed as a written order until January 15, 2013. Jerry thus had more than three months *after* the hearing to present a declaration or other competent evidence (i.e., bank statements or similar tracing documents) regarding the disposition of the $30,000 REDUX payment. However, Jerry did not do so, despite the court's earlier suggestion that he could. Significantly, the e-mail from Jerry that

13

Jerry's attorney presented to the court demonstrated that Jerry was available to send communications during his deployment.

Given this scenario, in which Jerry had ample opportunity to provide live or declaratory testimony regarding the $30,000 lump sum payment, the trial court's decision to proceed with determining the issues raised by Lucina's motion a year and a half later, and not to continue the matter again to allow Jerry to testify in person, did not deprive Jerry of a meaningful opportunity to be heard on this issue. Under the circumstances of this case, the manner in which the court handled this issue did not violate Jerry's due process rights.[8]

B.    *Servicemembers Civil Relief Act*

Jerry contends that the trial court erred in not granting his request for an additional stay pursuant to 50 U.S.C. Appendix section 522, subdivision (d), a provision of the SCRA.

The purposes of the SCRA (50 U.S.C. Appen. § 501 et seq.) are "(1) to provide for, strengthen, and expedite the national defense through protection extended . . . to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and [¶] (2) to provide for the temporary suspension of

---

[8]    We reiterate that if Jerry had presented any evidence that would have created a conflict as to whether the $30,000 lump sum payment had been used by the community during the marriage, thereby creating an issue of credibility, it might have been error for the court to permit one party to testify in person when the other party was unavailable to present live testimony. However, there was no credibility issue here because Jerry failed to present any admissible evidence as to the disposition of the $30,000 lump sum payment.

14

judicial . . . proceedings . . . that may adversely affect the civil rights of servicemembers during their military service." (50 U.S.C. Appen. § 502.) The SCRA applies to any judicial proceeding in state court, except criminal proceedings. (50 U.S.C. § 512(a) & (b).) The SCRA is to be "construed to prevent any disadvantage to a servicemember litigant resulting from his or her military service" and "must be 'liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation.' [Citation.]" (*George P. v. Superior Court* (2005) 127 Cal.App.4th 216, 225 (*George P.*).)

Upon application, a military servicemember who is a party to a civil action is entitled to one mandatory stay of the proceedings for 90 days. (50 U.S.C. Appen. § 522(b)(1).) The application must set forth facts that show how "current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear" and "[a] letter . . . from the . . . commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized . . . at the time of the letter." (50 U.S.C. Appen. § 522(b)(2)(A) & (B).) "The court must stay the proceeding for not less than 90 days" upon such an application. (*George P.*, *supra*, 127 Cal.App.4th at pp. 223–224.)

A servicemember "may apply for an additional stay based on continuing material effect of military duty on the servicemember's ability to appear." (50 U.S.C. Appen. § 522(d)(1).) "The servicemember must provide the same information as was required for the initial stay. . . . [I]f the court refuses to grant an additional stay of

15

proceedings . . . , the court shall appoint counsel to represent the servicemember in the action or proceeding.' " (*George P.*, *supra*, 127 Cal.App.4th at p. 224, quoting 50 U.S.C. Appen. § 522(d)(1), (d)(2).)  Although "section 522 of the SCRA sharply restricts the court's discretion with respect to granting or denying the initial 90-day stay" by requiring that stay "whenever there is a showing of how military duty materially affects a servicemember's ability to appear in the action supported by a letter from the servicemember's commanding officer," the SCRA distinguishes this relatively automatic 90-day initial stay from further " 'additional' " stays, "expressly provid[ing] that the court may 'refuse[] to grant an additional stay.' " (*George P.*, *supra*, at p. 224. quoting 50 U.S.C. Appen. § 522(d).)  The protection that the SCRA provides to a servicemember who is denied an additional stay is the appointment of counsel to represent the servicemember's interests.  (*George P.*, *supra*, at p. 224.)

It is worth noting that the SCRA is to be used as "a shield, not a sword." (*George P.*, *supra*, 127 Cal.App.4th at p. 225.)  "The goal of preventing a servicemember from being disadvantaged by his or her service to the country is not furthered by giving servicemembers an unwarranted advantage over civilian litigants." (*Ibid.*)  Thus, a ruling on a request for an additional stay under the SCRA necessarily depends on the facts and circumstances of the particular case.  (*Ibid.*)

Jerry contrasts his situation with the one faced by the petitioner in *George P.*, *supra*, 127 Cal.App.4th at pages 221-222.  *George P.* involved a juvenile dependency proceeding.  During the pendency of the dependency case, George P. was sent to Iraq, and he sought and was granted a 90-day stay under the SCRA.  (*Id.* at p. 221.)  After the

16

termination of the stay, and after the completion of the six-month review hearing, George P. requested an additional stay, due to his continued deployment. (*Id*. at p. 222.) The trial court denied the motion for an additional stay, stating that George P. " 'ha[d] been given more than a fair opportunity to participate in these proceedings.' " (*Ibid*.) Following the court's denial of George P.'s request for an additional stay, the trial court terminated reunification services and set the case for a permanency plan hearing. George P. argued in his petition for writ of review that stays are mandatory under the SCRA. (*Ibid*.)

The *George P.* court concluded that the statutory language of the SCRA is clear, in that it provides for one mandatory 90-day stay, but that additional stays are at the discretion of the trial court. (*George P.*, *supra*, 127 Cal.App.4th at p. 222.) The court further concluded that "the record supports the juvenile court's conclusion that petitioner's military obligations did not adversely affect his ability to participate in the dependency case both personally and through counsel." (*Id*. at p. 223.) Jerry argues that *unlike* the father in *George P.*, he "never had a fair opportunity to participate in proceedings related to the REDUX payment issue due to his deployment." We disagree.

Jerry first filed a responsive declaration to Lucina's motion on June 7, 2011, more than a year before the trial court ultimately determined Lucina's motion. Jerry failed to mention the REDUX retirement system, which he later claimed reduced the value of his pension and required a different calculation of Lucina's portion of his pension, and also failed to mention the $30,000 lump sum payment at that time. The hearing on Lucina's motion was set for June 13, 2011. However, on that date Jerry, through his attorney,

17

requested a stay of the proceedings due to Jerry's military service. The trial court granted a temporary stay of the proceeding, agreeing to continue the hearing to March 2012. Jerry concedes in his briefing that this continuance was sufficient to fulfill the SCRA's requirement of a 90-day stay. Thus, he acknowledges that it was within the trial court's discretion to grant or deny any requests for additional stays after the mandatory 90-day stay ended.

Jerry contends that the trial court should not have exercised that discretion to deny him an additional stay. He argues, "But how can Respondent be expected to present evidence to the contrary [regarding what happened to the lump sum payment] when he is stationed in Afghanistan—an active war zone?" The trial court provided a response to this, indicating to Jerry's attorney that Jerry could have filed a declaration regarding this issue. In fact, Jerry was in contact with his attorney during the period preceding the hearing, and could have presented evidence to the court. Jerry was represented the entire time, and had sought numerous continuances leading up to his deployment. Jerry provided no explanation as to why his deployment prevented him from offering documentary or other evidence regarding the REDUX payment. Given all of this, the record supports the trial court's implicit determination that Jerry's military obligations did not adversely affect his ability to participate in these proceedings, but, rather, that Jerry made a tactical decision not to offer any evidentiary support for his position and instead chose to seek additional continuances on a matter that had been languishing for a year and a half. The trial court could have reasonably concluded that Jerry had been provided ample opportunity to gather and submit any relevant evidence, including his own

18

testimony by way of declaration. The record therefore supports the court's determination that it was not necessary to grant Jerry's request for an additional stay under the SCRA.

C.    *The trial court did not err in ordering that the military pension division and the attorney fees awarded to Lucina be collectible as spousal support.*

Referring to Family Code section 4320, Jerry contends that the trial court "failed to balance the hardships to both parties when it ordered the division of Respondent's military pension, and the attorney's fees awarded to Petitioner, to be collectible as spousal support because it did not give sufficient weight to the fact that Respondent was deployed in Afghanistan—an active war zone." Family Code section 4320 provides a nonexhaustive list of factors for a trial court to consider when making a spousal support award, and requires the court to consider, among other things, "the balance of hardships to each party." (*Id.*, § 4320, subd. (k).)[9]

---

9    Family Code section 4320 provides in full:

"In ordering spousal support under this part, the court shall consider all of the following circumstances:

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were

19

incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h) The age and health of the parties.

"(i) Documented evidence of any history of domestic violence, as defined in Section 6211, between the parties, . . . including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party.

"(j) The immediate and specific tax consequences to each party.

"(k) The balance of the hardships to each party.

"(l) The goal that the supported party shall be self-supporting within a reasonable period of time.  Except in the case of a marriage of long duration as described in Section 4336, a 'reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage.  However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of

20

Although Jerry initially phrases this as a different issue from the other two issues that he raises in his appeal, Jerry goes on to essentially argue that the trial court erred in (a) proceeding with the hearing without allowing Jerry to testify, and then (b) referring to the fact that Jerry failed to present evidence to contradict Lucina's evidence. However, as we have already explained, the trial court did not err in concluding that Jerry had not made any showing of facts different from what Lucina had presented, including by way of declaration, and therefore, that the court could proceed to determine the disposition of the $30,000 payment, even in Jerry's absence.

Even if Jerry is, in fact, arguing that the trial court failed to meet its obligation under Family Code section 4320 to balance the hardships to the parties when it decided to make the order collectible as spousal support, we reject such an argument.[10] First, although Jerry contends that the trial court's error was in failing to accord due weight to the fact that he was deployed to Afghanistan, Jerry does not explain why such a factor presented a hardship to him with respect to the court's decision to make the order *collectible as spousal support*. Jerry does not suggest that his deployment rendered it

time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties.

"(m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with . . . Section 4325.

"(n) Any other factors the court determines are just and equitable."

[10]     Jerry's opening brief is somewhat ambiguous with respect to this argument, and we do not have the benefit of further articulation of the claim being made because Jerry did not file a reply brief.

difficult for him to make these monthly payments, or that it somehow otherwise interferes with his ability to meet this obligation. It was determined that Jerry is to pay Lucina certain amounts owed to her. The fact that the trial court made these items collectible as spousal support actually *benefits* Jerry, in that as spousal support, those payments are tax deductible. (See generally 26 U.S.C. §§ 71, 215 [setting forth rules for taxing of "alimony" or "separate maintenance" payments made pursuant to a divorce decree]; see also <http://www.irs.gov/taxtopics/tc452.html> ["You may deduct from income the amount of alimony or separate maintenance you paid, and you must include in income the amount of alimony or separate maintenance you received"].) It is difficult to see how the court's decision to make these payments collectible as spousal support harmed Jerry, and Jerry does not explain how this was detrimental to him. As noted, it would appear that this portion of the court's order benefitted Jerry. Further, Jerry points to no place in the record to support his contention that the trial court did not give sufficient weight to his deployment circumstances, or that the court did not otherwise "weigh" the various factors provided in Family Code section 4320. We therefore reject such an argument.

## IV.

## DISPOSITION

The order of the trial court is affirmed.  Lucina shall recover costs on appeal.


_____
                                                    AARON, J.

WE CONCUR:


_____
            NARES, Acting P. J.


_____
            McDONALD, J.

23